UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOYCE M. CONYERS**,<br><br>Plaintiff,<br><br>v.<br><br>**JOEL WESTPHAL**,<br><br>Defendant. | Case No. 1:16-cv-02000 (CRC) |

**MEMORANDUM OPINION**

Joel Westphal, Director of the Navy Archives, may here be grateful for the Westfall Act. That is so because it affords "federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties," Osborn v. Haley, 549 U.S. 225, 229 (2007), and such is this suit. Joyce Conyers, a Navy records manager, has sued Westphal for common-law assault, based on incidents arising out of a workplace dispute. The Attorney General, through delegated authority, has certified that those events occurred within the scope of Westphal's employment. Because the Court agrees with that determination, the action is exclusively cognizable as one against the United States under the Federal Tort Claims Act. But for the reasons detailed below, that means this Court is without jurisdiction to hear the case.

**I.   Background**

Westphal and Conyers both work at the Navy Yard in Washington, D.C. Am. Compl. ¶ 3. Conyers alleges that, in June 2016, Westphal sent her a "threatening" email, which read as follows: "You broke the chain [of command] when you gave a direction to a member of [my] staff. Please cease and desist and use the chain." Id. ¶ 7. Conyers "felt threatened," and

1

responded: "Please do not email again[.] [T]his is threatening and unprofessional. You may email my supervisor. Your emails are derogatory and commanding." Id. ¶ 8. After the email exchange, Westphal allegedly walked to Conyers' office and stopped in the doorway. Id. ¶¶ 9–10. He was "extremely angry and agitated," spoke to her "in a threatening and menacing manner," and "pointed his finger at [Conyers] [warning her] that she better not communicate again with his employees and that he was going to file a complaint." Id. ¶¶ 10–11, 13. Conyers—"fear[ing] for her safety"—then "asked [Westphal] to leave her office," and he did. Id. ¶¶ 14–16. Later, when Conyers was speaking to a front-desk security officer about the incident, a still-angry Westphal allegedly "came bursting through" a set of double doors, "charging towards [Conyers]"; but then he "proceeded to exit and went outside" the building. Id. ¶¶ 18–20. The whole incident allegedly had significant physical repercussions for Conyers: She claims to have developed high blood pressure, dizziness, and a migraine, and that her body started to shake. Id. ¶¶ 25, 28. After a police officer took her to a police station to provide a statement, Conyers was transported by ambulance to a local hospital due to her high blood pressure. Id. ¶¶ 26–29. The next day, her primary care doctor allegedly "instructed [Conyers] to be on bedrest for eight . . . days." Id. ¶ 31. Conyers returned to work roughly three weeks later, but remained fearful of Westphal. Id. ¶¶ 32–34.

The next month, in July 2016, Conyers filed a complaint in D.C. Superior Court based on the above allegations, naming Westphal as the sole defendant, in his individual capacity. As amended, the complaint alleges a single count of assault. See Am. Compl. ¶¶ 35–40. In October 2016, Westphal filed a Notice of Removal in this Court, attaching a Certification signed by the Chief of the Civil Division of the U.S. Attorney's Office for the District of Columbia, pursuant to authority delegated by the Attorney General. See 28 C.F.R. § 15.4. The Certification stated

that "Defendant Joel Westphal was an employee of the U.S. Department of the Navy and was acting within the scope of his [f]ederal employment at the time of the incidents out of which the claims alleged [in the instant complaint] therein arose." Notice of Removal, Attach. 2. Under the Federal Employees Liability Reform and Tort Compensation Act of 1988—commonly referred to as the Westfall Act—such certification is "conclusive for purposes of removal," in that "once certification and removal are effected, exclusive competence to adjudicate the case resides in the federal court, and that court may not remand the suit to the state court." Osborn, 549 U.S. at 231.[1]  Moreover, so long as the district court agrees with the certification's scope-of-employment determination, "the United States is substituted as defendant in place of the employee," and "[t]he litigation is thereafter governed by" the Federal Tort Claims Act ("FTCA"), 60 Stat. 842. Osborn, 549 U.S. at 230.

Having removed the case to this Court, Westphal now seeks to dismiss it, for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[2] He argues that, in light of the Attorney General's certification, the suit is cognizable only as one against the United States under the FTCA. Accordingly, he contends that this Court is without subject matter jurisdiction, because (1) Conyers has failed to exhaust her administrative remedies by filing a damages claim with the appropriate agency (here, the Department of the Navy), as required by the FTCA, see 28 U.S.C. § 2675(a); and (2) Conyers' assault claim, as an intentional tort, is not

---

[1] In light of that clear command, the Court will deny Conyers' Motion to Remand.

[2] Westphal also construed Conyers' complaint as asserting claims of intimidation and intentional infliction of emotional distress, and argued that those purported claims should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). See Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s MSJ") 11–12. But Conyers has clarified that assault is her only remaining claim. See Pl.'s Mem. Opp'n Def.'s Mot. to Dismiss & Mem. Supp. Mot. to Remand ("Pl.'s Opp'n) 3 n.1.

3

covered by the FTCA's waiver of sovereign immunity, see 28 U.S.C. § 2680(h). Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s MSJ") 5–11.[3] Conyers does not directly contest these arguments, and therefore has effectively conceded them. See Buggs v. Powell, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (arguments not addressed in an opposition may be treated as conceded) (citing FDIC v. Bender, 127 F.3d 58, 67–68 (D.C. Cir. 1997)). However, she strikes at a root premise underlying them all: Namely, she insists that Westphal's alleged actions were beyond the scope of his employment. See Pl.'s Mem. Opp'n Def.'s Mot. Dismiss & Mem. Supp. Mot. Remand ("Pl.'s Opp'n") 9–13. If that were so, the FTCA would not apply, and none of Westphal's jurisdictional arguments would either.

Ultimately, though, the Court agrees with the government's determination that Westphal's alleged conduct fell within the scope of his employment. It follows that the Court is without subject matter jurisdiction over Conyers' claim.

## II. Legal Standard

Because federal courts are of limited jurisdiction, with "only that power authorized by Constitution and statute," Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994)), they have "an affirmative obligation" to ascertain the existence of subject matter jurisdiction, James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1092 (D.C. Cir. 1996). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the [case] in its entirety." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).

---

[3] Westphal also argued in his opening memorandum that under a head-scratching application of the derivative jurisdiction doctrine, this Court—which would otherwise have exclusive jurisdiction over the claim—lacks jurisdiction because the D.C. Superior Court lacked jurisdiction prior to removal. See Def.'s MSJ 5–7. But he appears to have abandoned that argument in his reply.

Where, as here, the defendant does not challenge the facts alleged in the complaint in moving to dismiss for lack of jurisdiction, the court accepts the truth of those factual allegations and draws all inferences in favor of the plaintiff. Am. Nat. Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011); see also Erby v. United States, 424 F. Supp. 2d 180, 182 (D.D.C. 2006) ("If a defendant mounts a 'facial' [as opposed to a factual] challenge [to jurisdiction,] the court must accept as true the allegations in the complaint and consider the factual allegations of the complaint in the light most favorable to the non-moving party."). However, "those inferences [which] are unsupported by facts alleged in the complaint or amount merely to legal conclusions" should not be assumed as true. Merkulov v. United States Park Police, 75 F. Supp. 3d 126, 128 (D.D.C. 2014) (citing Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002)).

## III. Analysis

The Attorney General's certification is "the first, but not the final word" on whether Westphal's actions, as alleged in Conyers' complaint, were within the scope of his employment. Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 432 (1995). "A plaintiff may request judicial review of the Attorney General's scope-of-employment determination," Osborn, 549 U.S. at 246, and Conyers has done so here. However, "[t]he Attorney General's certification that the defendant was . . . acting [within the scope of employment] is *prima facie* evidence of that fact," Jacobs v. Vrobel, 724 F.3d 217, 220 (D.C. Cir. 2013), carrying a "rebuttable presumption that the employee has absolute immunity from the lawsuit," Wilson v. Libby, 535 F.3d 697, 711 (D.C. Cir. 2008).

"Scope of employment questions are governed by the law of the place where the employment relationship exists." Majano v. United States, 469 F.3d 138, 141 (D.C. Cir. 2006). Here, that place is the District of Columbia, so D.C. law governs. Id.; see also Haddon v. United

5

States, 68 F.3d 1420, 1423 (D.C. Cir. 1995); Kimbro v. Velten, 30 F.3d 1501, 1506 (D.C. Cir. 1994). Under D.C. law, the "[c]onduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master." Schecter v. Merchants Home Delivery, Inc., 892 A.2d 415, 427 (D.C. 2006) (quoting Restatement (Second) of Agency § 228 (1958)).

All four of these conditions are satisfied here. First, Westphal's conduct, which was aimed at enforcing his view of a proper chain of command, is "of the kind he is employed to perform" as the *Director* of the Navy Archives. Schecter, 892 A.2d at 427. Indeed, the *sole* communications alleged in the complaint between Westphal and Conyers were work-related: Westphal sent an email to Conyers telling her that she had inappropriately given a direction to a member of his staff, and then he followed up in person by telling her that "she better not communicate again with his employees and that he was going to file a complaint." Am. Compl. ¶¶ 7, 13. Even if Westphal was angry—or "menacing," "agitated," or "gritting . . . his teeth"—while taking these actions, id. ¶¶ 10–11, 13, and even if Conyers felt threatened by them, see id. ¶¶ 8, 14, the actions themselves were still typical of work a senior-level manager might be expected to perform. Second, Westphal's alleged conduct "occur[ed] substantially within . . . authorized time and space limits." Schecter, 892 A.2d at 427. When Westphal allegedly sent an email, came to Conyers' office, and passed by her at the security desk, he did so at the workplace and during the workday. Third, it is clear that Westphal's conduct was "actuated, at least in part, by a purpose to serve [his agency employer]." Schecter, 892 A.2d at 427. As explained above, his conduct was allegedly motivated, at least partially, by a desire to enforce a departmental

6

chain of command.  Finally, Conyers does not allege that Westphal used force against her.  In fact, she alleges that he left her office when asked to do so, and that he exited the building when he saw her at the security desk.  Accordingly, "[b]ecause the complaint . . . contains no allegation that [Westphal] used any force," the final criterion is not "at issue."  Haddon, 68 F.3d at 1424 (finding no force for purpose of scope-of-employment analysis where defendant's alleged conduct was limited to a verbal threat).

Conyers counters that Westphal's actions were beyond the scope of his employment because he "is not [her] supervisor nor within her chain of command, so [neither] disciplining her nor confronting her [were] within his position's duties."  Pl.'s Opp'n 10.  But for actions to be "of the kind" an employee is expected to perform, they need not be spelled out on a list of his job duties.  Rather, the test is whether the employee's "actions [were] 'of the same general nature as that authorized' or 'incidental to the conduct authorized.'"  Haddon, 68 F.3d at 1424 (quoting Restatement (Second) of Agency § 229)).  Conduct is incidental—or "foreseeable"—when it is "a direct outgrowth of the employee's instructions or job assignment."  Boykin v. DC, 484 A.2d 560, 562 (D.C. 1984) (quoting Penn Cent. Transp. Co. v. Reddick, 398 A.2d 27, 32 (D.C. 1979)).  Clearly, Westphal's purported attempts to enforce his own chain of command—including by emailing or threatening to file a complaint against a fellow employee—were foreseeable incidents of his managerial duties.

Finally, Conyers seeks to draw the Court's attention away from Westphal's actions to the reactive conduct of others.  See Pl.'s Opp'n 10–13.  She points to her own trip to the hospital and subsequent bedrest, see Am. Compl. ¶ 29–31; the security officer who "called in a report" after Conyers "informed him of what had happened [and] that she felt unsafe," id. ¶¶ 18, 22; and a D.C. Superior Court "Stay Away Order," which was directed at both parties, Pl.'s Opp'n, Ex. 1.

Giving Conyers the benefit of all reasonable inferences, these various facts could indicate that Westphal's actions were "serious and severe," as she suggests. Pl.'s Opp'n 11. But they do not plausibly show that Westphal's actions were beyond the scope of his employment. And Conyers has not cited any legal authority for the proposition that the reactions of others should bring otherwise work-related conduct outside the scope of employment.

For the above reasons, the Court concurs with the Attorney General's certification, and finds that Westphal's alleged conduct was within the scope of his employment.[4] Accordingly, to the extent this action may be brought at all, it must be brought against the United States under the FTCA. Osborn, 549 U.S. at 230. But as argued by Westphal, see Def.'s MSJ 5–11, and (effectively) conceded by Conyers, this Court lacks jurisdiction over the case once it is governed by that statute. Conyers has failed to exhaust her administrative remedies, which the FTCA requires her to do. See Ali v. Rumsfeld, 649 F.3d 762, 775 (D.C. Cir. 2011) (describing the failure to exhaust administrative remedies under the FTCA as a "jurisdictional" defect). And the statute does not permit her to bring a claim of assault. See Koch v. United States, 209 F. Supp. 2d 89, 94 (D.D.C. 2002) (dismissing plaintiff's claim for assault as "not cognizable under the FTCA" pursuant to 28 U.S.C. § 2680). The Court will therefore dismiss the case.

---

[4] For similar reasons, Conyers is not entitled to discovery. "[T]o obtain discovery and an evidentiary hearing, [Conyers' burden is to] allege[] sufficient facts that, taken as true, would establish that [Westphal's] actions exceeded the scope of [his] employment." Stokes v. Cross, 327 F.3d 1210, 1215 (D.C. Cir. 2003). As explained above, Conyers has not met this burden. (Indeed, because Westphal's facial jurisdictional challenge does not challenge any facts alleged in the complaint, Conyers' burden to obtain discovery and her burden to establish jurisdiction are one and the same.)

## IV. Conclusion

For the above reasons, the Court will grant Westphal's motion to dismiss.

                                                    */s/ Christopher R. Cooper*
                                                  CHRISTOPHER R. COOPER
                                                  United States District Judge

Date: <u>January 27, 2017</u>